IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| WILLIE RAY LOVE, ) | |
|         Plaintiff, ) | |
| ) | |
| vs. ) | No. 3:22-CV-1496-E (BH) |
| ) | |
| CITY OF DALLAS, TEXAS, ET AL. ) | |
|  et al., ) | |
|         Defendants. ) | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the plaintiff's claims seeking to overturn his civil citation convictions and damages should be **DISMISSED WITHOUT PREJUDICE**, his remaining federal claims should be **DISMISSED WITH PREJUDICE**, and his state law claims should be **DISMISSED WITHOUT PREJUDICE** to pursuing them in state court.

## I.   BACKGROUND

Willie Ray Love (Plaintiff) sues the City of Dallas (City), the City of Dallas Municipal Court (Municipal Court), the Dallas City Attorney (City Attorney), and a private law firm (Law Firm), for alleged illegalities in the City's attempts to collect civil citation and lien payments from him. (*See generally* doc. 3, doc. 8.)[2] He contends that in April 2021, Law Firm, which was retained by City, notified him that he had four unpaid municipal civil citations from 2014 and 2015 relating to property upkeep. (doc. 3 at 3; doc. 8 at 2, 14.) He was convicted of the offenses that same month; he does not allege that he appealed the convictions. (doc. 8 at 7.) Plaintiff claims that he knew nothing about the citations until he received the April 2021 notice, and that City sent notices of

---

[1] By *Special Order No.* 3-251, this *pro se* case has been automatically referred for full case management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

money that he owed for liens on his property to the wrong address. (doc. 3 at 4; doc. 8 at 2, 12, 15.) He attributes this to the fact that more than decade earlier, the Dallas Central Appraisal District mistakenly changed his address without his knowledge or consent. (doc. 8 at 11.) He eventually received notice of the amount owed and paid City over $10,000. (*Id.* at 12.) He appeared twice before the "Administrative Hearing Officer Walk-In Court" to explain, but he was informed that "it was too late because the case had been closed." (*Id.*)

Plaintiff now claims that the "liens were past the statute of limitations when he paid them off" and that City lacked jurisdiction to demand payment for them. (*Id.*) He claims that his civil citation convictions are invalid because they were issued outside of the statute of limitations and were not properly served on him, he was convicted before he received actual notice of the citations, and his convictions violate his right to be free from double jeopardy. (*See* doc. 3 at 3; doc. 8 at 2.) According to him, by attempting to collect on the citations and lien payments, Defendants violated his rights to procedural due process under the Fifth and Fourteenth amendments, to examine evidence under the Federal Rules of Evidence, and to be free from double jeopardy, denying him benefits and damaging his "good name." (doc. 3 at 2-3; doc. 8 at 10.) He also claims that Defendants violated the Texas Constitution, the Texas Civil Practice and Remedies Code, the Texas Rules of Civil Procedure, the Texas Government Code, and the Dallas City Code. (doc. 8 at 10-11.) He seeks an order clearing his "record of owing $1,201.22 in unpaid civil citations," the return of lien payments that he made, and $5,000 in mental anguish damages. (doc. 8 at 12.)

## II.  PRELIMINARY SCREENING

Because Plaintiff has been permitted to proceed *in forma pauperis* (IFP), his complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). That statute provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if

it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Courts follow the same analysis in determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) as when ruling on a motion to dismiss under Rule 12(b)(6). *See Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam). A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Neither mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

### III. *ROOKER-FELDMAN*

Plaintiff seeks to "clear" or invalidate his civil citation convictions and for damages stemming from his convictions. (doc. 8 at 12)[3]

The *Rooker-Feldman*[4] doctrine divests federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 281-82 (2005). "'[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts.'" *See Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir.

---

[3] Plaintiff's responses to a magistrate judge's questionnaire are an amendment to his pleadings. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

[4] This doctrine is named after *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). These decisions "exhibit the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 290 (2005).

3

2000) (quoting *Liedtke v. State Bar*, 18 F.3d 315, 317 (5th Cir. 1994). Under 28 U.S.C. § 1257, only the United States Supreme Court has exclusive jurisdiction to review final judgments or decrees entered by the highest court of a state. Accordingly, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). This jurisdictional bar extends even to those cases "'in which the constitutional claims presented…are inextricably intertwined with the state court's grant or denial of relief." *Jordaan v. Hall*, 275 F.Supp.2d 778, 788 (N.D. Tex. 2003) (quoting *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986)).

Under the *Rooker-Feldman* doctrine, the Court lacks subject matter jurisdiction to clear Plaintiff's civil citation convictions from his record, effectively invalidating or overturning them. *See*, *e.g.*, *Erlandson v. Northeglenn Mun. Court*, 528 F.3d 785, 789-90 (10th Cir. 2008) (concluding that the court, pursuant to the *Rooker-Feldman* doctrine, lacked subject matter jurisdiction over § 1983 challenges to municipal court conviction for littering); *Gonzalez v. Janssen*, Civil Action No. H-21-2580, 2021 WL 3639666, at *1-2 (S.D. Tex. Aug. 17, 2021) (finding that *Rooker-Feldman* doctrine applied to the plaintiff's challenge to a state court eviction order allegedly issued in violation of the bill of attainder and *ex post facto* provisions of the Constitution); *Algoe v. State of Texas*, Civil Action No. 3:15-CV-1162-D (consol. with 3:15-CV-1204-D), 2016 WL 6902154, at *8-9 (N.D. Tex. Sep. 29, 2016), *rec. accepted* 2016 WL 6893682 (N.D. Tex. Sep. 21, 2016) (concluding that court lacked jurisdiction under the *Rooker-Feldman* doctrine where the plaintiff "sought review and oversight of three state municipal traffic cases in which he was found guilty…in essence, asking for an appellate review of the sufficiency of the evidence in the municipal cases"), *rec. accepted* 2016 WL 6893682 (N.D. Tex. Sep. 21, 2016);

*Leach v. Manning*, 105 F.Supp.2d 707, 714 (E.D. Mich. 2000) (*Rooker-Feldman* precluded the plaintiff's challenge to the "merits of the civil infraction citations issued against them and their property"). The doctrine also precludes jurisdiction over Plaintiff's claims for damages to the extent that the civil citation convictions caused those damages. *See*, *e.g.*, *Sims v. McDilda*, SA-20-CV-00722-XR, 2021 WL 84355, at *4 (W.D. Tex. Jan. 11, 2021) ("Two hallmarks of the *Rooker-Feldman* inquiry are the source and timing of the injury, and Plaintiff's complaint is about injuries suffered in 2018 and 2019 as a result of the judgment, not McDilda's litigation conduct. The Court thus finds that this claim is barred by *Rooker-Feldman*.").

## IV.   SECTION 1983

Plaintiff's claims that state actors violated his constitutional rights are brought under 42 U.S.C. § 1983.[5] Under that statute, he must allege facts showing that (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). "Under color of state law" excludes from its reach purely private conduct, no matter how discriminatory or wrongful. *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982).

### A.  Non-Jural Entity

Plaintiff sues Municipal Court, but "[f]ederal courts in Texas have uniformly held that courts are nonjural entities that are not subject to suit." *Marshall v. Abbott*, Civil Action No. 4:21-CV-384-SDJ-CAN, 2022 WL 671009, at *4 (E.D. Tex. Feb. 4, 2022), *rec. accepted* 2022 WL

---

[5] Plaintiff also says that Defendants violated the Federal Rules of Evidence, but those rules do not provide a cause of action. *See*, *e.g.*, *Tcheumani v. Loop Ins. Mobility, Inc.*, 1:22-CV-892-LY-ML, 2022 WL 17815725, at *2 (W.D. Tex. Oct. 20, 2022).

659159 (E.D. Tex. May 4, 2022) (collecting cases). Because it is a non-jural entity, Plaintiff's claims against Municipal Court should be dismissed with prejudice.

**B.  Municipal Liability**

Plaintiff sues City for attempting to collect civil citation and lien payments.

Municipalities, including cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Jones v. City of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). Municipalities can also be liable for the illegal or unconstitutional actions of final policymakers. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). Official municipal policy includes the decisions of the government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Monell*, 436 U.S. at 691-95. "Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

"The description of a policy or custom and its relationship to the underlying constitutional violation...cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept's*, 130 F.3d 1662, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain recovery...or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

Despite opportunity, Plaintiff has failed to identify a policy or custom that was the moving source of a constitutional violation; nor does he identify a final policy maker or attribute any of the actions that he complains about to the same. (doc. 8 at 11-12.) Accordingly, he fails to state a § 1983 claim against City.

**C.    Prosecutorial Immunity**

Despite suing City Attorney, Plaintiff makes no factual allegations concerning him.

Prosecutors enjoy absolute immunity to initiate and pursue criminal prosecutions. *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). This immunity extends to municipal prosecutors. *Melton v. Frank*, 114 F.3d 1184 (5th Cir. 1997) (holding that municipal prosecutors

are entitled to absolute prosecutorial immunity from § 1983 claims) (unpublished); *see also Smith v. Connick*, No. 13-52, 2014 WL 585616, at *1-4 (E.D. La. Feb. 14, 2014). "These standards also apply to a prosecutor's acts in initiating *civil* proceedings as long as the prosecutor is 'functioning in an enforcement role analogous' to his role in criminal proceedings." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (citations omitted); *see also Metro Charities, Inc. v. Moore*, 748 F.Supp. 1156, 1163 (S.D. Miss. 1990) ("The United States Supreme Court has consistently held that state prosecutors have absolute immunity from monetary liability under section 1983 for quasi-judicial functions, including initiating actions and determining whether to bring such actions, whether civil enforcement proceedings or criminal proceedings.") (citations omitted).

Here, Plaintiff has not alleged that City Attorney acted in anything other than an enforcement role as a prosecutor by prosecuting him for municipal code violations. City Attorney is entitled to prosecutorial immunity and such claims may be dismissed with prejudice. *See, e.g.*, *Krage v. City of Lakewood*, Case No. 2:19-cv-06069-JWH-SHK, 2022 WL 17224654, at *11 (C.D. Cal. Aug. 22, 2022) (concluding that city attorney was entitled to prosecutorial immunity for decision to charge the plaintiff with a municipal code violation and prosecute the case in court), *rec. accepted* 2023 WL 2167358 (C.D. Cal. Feb. 21, 2023); *Hill v. City of St. Louis, Mo.*, No. 4:19-CV-3155 RLW, 2020 WL 1812716, at *5 (E.D. Mo. Apr. 9, 2020) (finding that city attorney's acts in filing charges against the plaintiff to recover past due fines and taxes owed to the city was an action intimately associated with the judicial process and protected by prosecutorial immunity).

**D. Non-State Actor**

Plaintiff sues Law Firm for "assist[ing] the City of Dallas Municipal Court in convicting and depriving me of my constitutional rights." (doc. 8 at 6.) The basis of the claim is a notice that

Law Firm sent to Plaintiff "stating that the City of Dallas Municipal Court records show that [Plaintiff] was issued unpaid municipal civil citations…and…had ten days to pay them." (*Id.* at 2.)

Private lawyers, even those retained by municipalities or governmental agencies, are not state actors for purposes of § 1983. *See*, *e.g.*, *Blackwell v. Allen*, No. 22-1300, 2022 WL 17832191, at *6 (6th Cir. Dec. 21, 2022) (unpublished) ("A private-sector attorney does not automatically become a state actor just by representing a government entity.") (citing *Dyer v. Md. State Bd. of Educ.*, 685 F. App'x 261, 263 (4th Cir. 2017) (per curiam); *Caleb v. Grier*, 598 F. App'x 227, 234 (5th Cir. 2015) (per curiam); *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F.Supp.2d 833, 841 (N.D. Ohio 2009); *Freshwater v. Mount Vernon City Sch. Dist. Bd. of Educ.,* No. 2:09-cv-464, 2010 WL 1434314, at *2 (S.D. Ohio Apr. 8, 2010); *see also Stannard v. North East Indep. Sch. Dist.*, Case No. SA-09-CA-98-OG, 2009 WL 10679978, at *4 (W.D. Tex. Oct. 30, 2009) ("A private law firm and one of its lawyers acting as legal advisors to public bodies are not state actors.") (collecting cases).

In some circumstances, a private party may be acting "under color of state law" and held liable under § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). In *Priester v. Lowndes Cty.*, 354 F.3d 414 (5th Cir. 2004), *cert. denied*, 543 U.S. 829 (2004), the Fifth Circuit explained that "[f]or a private citizen…to be held liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors." *Id.* at 420 (citing *Mylett v. Jeane,* 879 F.2d 1272, 1275 (5th Cir. 1989) (per curiam)). The plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act, and (2) a deprivation of constitutional rights. *Id.* Plaintiff does not allege anything like that here.

In the absence of an alleged conspiracy with a state actor, a private party can be also held to be a state actor (1) when there is a sufficiently close nexus between the state and the challenged

9

action of the private party so that the action of the party may be fairly treated as that of the state itself, (2) where the private party has exercised powers that are "traditionally the exclusive prerogative of the state," or (3) where the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the action of the private party must in law be deemed that of the state. *Blum*, 457 U.S. at 1004.

Plaintiff's sparse allegations do not allow for a finding that any of those scenarios would apply. City retained Law Firm to collect debts, but there is no indication that Law Firm lacked discretion in how to do so, or that City otherwise controlled its actions such that those actions should be treated as those of City. Nor is there any indication that Law Firm exercised powers that were traditionally the prerogative of the state or was coerced. Because Plaintiff fails to establish that Law Firm acted under color of state law, any § 1983 claims against it should be dismissed.

## V.  STATE LAW CLAIMS

Plaintiff alleges that Defendants violated the Texas Constitution, the Texas Civil Practice and Remedies Code, the Texas Rules of Civil Procedure, the Texas Government Code, and the Dallas City Code. (doc. 8 at 10-11.)

Under 28 U.S.C. § 1367(a), federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." They have the "power to hear a state law claim under pendant or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:15-CV-1162-D, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1996).

10

When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3).[6] This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endant jurisdiction is a doctrine of discretion, not of [a] plaintiff's right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, because Plaintiff's federal claims are subject to dismissal, and because determination of those claims did not require consideration of the state law claims, the Court should decline to exercise supplemental jurisdiction over his remaining state law claims, and they should be dismissed without prejudice to pursuing them in state court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Sibley v. Lemaire*, 184 F.3d 481, 490 (5th Cir. 1999) (affirming the

---

[6]Under 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:

(1) the claim raises a novel or complex issue of law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it had original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

district court's decision not to hold a jury trial on the state negligence claim after it granted summary judgment on the § 1983 claims).

## VI. LEAVE TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

Leave to amend is not necessary, however, where the plaintiff has already pleaded his best case. *See Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (citations omitted). Here, Plaintiff responded to a detailed questionnaire. A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a pro se litigant to develop the factual basis for his complaint."). His federal claims clearly lack merit, and further leave to amend is neither necessary nor warranted. *See*, *e.g.*, *Duke v. Dallas Cty.*, No. 3:20-CV-117-G (BH), 2021 WL 3525106, at *3 (N.D. Tex. June 25, 2021), *rec. accepted*, 2021 WL 3204565 (N.D. Tex. July 29, 2021).

## VII. RECOMMENDATION

Plaintiff's claims seeking to overturn his civil citation convictions and damages resulting from those convictions should be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction, his remaining federal claims should be **DISMISSED WITH PREJUDICE** for failure to state a claim, and his state law claims should be **DISMISSED WITHOUT PREJUDICE** to their pursuit in state court.

**SIGNED on this 17th day of July, 2023.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE